UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MINNESOTA BANK & TRUST,

              Civil No. 22-1104 (JRT/ECW)
    Plaintiff,

v.

            **MEMORANDUM OPINION AND ORDER**
PRINCIPAL SECURITIES, INC,    **DENYING DEFENDANT'S MOTION TO**
                 **DISMISS**

    Defendant.

---

John Rock and Kathryn A. Stephens, **ROCK HUTCHINSON, PLLP,** 120 South Sixth Street, Suite 2480, Minneapolis, MN 55402, for Plaintiff.

Matthew R. Eslick, **PARKER DANIELS KIBORT, LLC**, 888 Colwell Building 123 North Third Street, Suite 888, Minneapolis, MN 55401; Thomas C. Goodhue, **MAYNARD COOPER & GALE, P.C.,** 801 Grand Avenue, Suite 100, Des Moines, IA 50309, for Defendant.

Plaintiff Minnesota Bank and Securities ("MB&T") brings this action against Defendant Principal Securities ("Principal"), alleging breach of contract, negligence, and promissory estoppel. MB&T's claims stem from a $5 million dollar loan it extended to a Minnesota LLC. As collateral for the loan, a member of the Minnesota LLC granted MB&T a security interest in an account maintained by Principal. MB&T alleges that Principal entered into an enforceable agreement whereby Principal agreed to protect and secure MB&T's collateral and that Principal breached this agreement when it improperly permitted the transfer of the pledged collateral without any notice to or approval from MB&T, as required by the agreement.

Principal now moves to dismiss the action in its entirety, arguing that MB&T fails to state a claim upon which relied may be granted. Because the Court finds that MB&T has alleged sufficient facts to survive the motion at this stage, the Court will deny Principal's motion.

## BACKGROUND

### I. FACTUAL BACKGROUND

In December 2015, MB&T, then operating as Signature Bank, made a commercial loan to 11 Water, LLC ("11 Water"), in the original principal amount of $5 million. (Compl. ¶¶ 1, 17, Apr. 28, 2022, Docket No. 1.) As collateral for the loan, 11 Water's joint owner and manager, Jack Strommen, granted MB&T a security interest in Strommen's brokerage account ("the Account"), which at the time was maintained by a predecessor of Principal. (*Id.* ¶¶ 3, 18.) As of December 1, 2015, the pledged account held assets in excess of $7 million. (*Id.* ¶ 3.) At MB&T's request and prior to closing the 11 Water loan agreement, Principal signed a Control Agreement and Acknowledgement of Pledge and Security Interest ("Control Agreement"), in which Principal acknowledged MB&T's first lien position and security interest in the Account, agreed to identify the Account in its records as being pledged to MB&T, and promised not to transfer any of the held assets without MB&T's prior written consent. (*Id.* ¶¶ 4, 20.) The Control Agreement identifies MB&T as the "Lender," Strommen as the "Grantor" and "Owner" of the pledged securities in the Account, and Principal as the party maintaining the Account. (*Id.* ¶ 20.)

Additionally, in the Control Agreement, Strommen provided notice to Principal that he, as the owner of the Account, granted a security interest in the Account and all securities, cash, and other assets held ("the Collateral"), to MB&T as the Lender. (*Id.* ¶ 21.) Strommen directed that the Collateral is "not to be paid to anyone other than to Lender until and unless [Principal] receive[s] further written notice from Lender." (*Id.*) Strommen further directed that the pledge is to "remain in full force and effect until Lender notifies [Principal] in writing to the contrary." (*Id.*) MB&T contends that it was a third-party creditor beneficiary of the Control Agreement executed by Strommen and Principal. (*Id.* ¶ 27.)

MB&T alleges that despite this acknowledgment and promise to protect its interest, on or about December 19, 2016, Principal improperly allowed the transfer of all the assets from the Account to another brokerage firm, without notice to or written approval from MB&T as required by the Control Agreement. (*Id.* ¶¶ 5, 28.) MB&T alleges this was improper because Principal was obligated to bar the transfer of the assets out of the Account unless MB&T provided its written approval for the transfer. (*Id.* ¶ 30.) Principal was the only entity or party that had the ability to bar the unapproved transfer, but it nonetheless allowed and helped facilitate it. (*Id.*) MB&T alleges that this transfer—while Strommen's obligations to MB&T remained outstanding—was in violation of the Control Agreement and caused significant damage to MB&T. (*Id.*)

At the time of the transfer, the Account held assets in an amount not less than $7,468,250.00. (*Id.*) MB&T alleges that absent Principal's agreement, it would not have accepted the Account as the sole security for the loan. (*Id.* at 23.) MB&T also alleges that Principal acknowledged MB&T's security interest in exchange for funds remaining on deposit with and under Principal's management. (*Id.*) The new brokerage firm did not identify the new account as collateral for MB&T and refused to formally acknowledge MB&T's lien and security interest. (*Id.* ¶ 6.)

Having lost the collateral securing 11 Water's indebtedness as a result of Principal's allowing the transfer, MB&T was forced to obtain additional agreements from the LLC members and guarantors of the Loan, in an attempt to partially re-securitize the loan. (*Id.* ¶ 7.) 11 Water eventually defaulted on the loan, and as of December 2019, the unpaid principal balance due to MB&T exceeded $3 million. (*Id.* ¶¶ 9, 34.)

In January 2020, MB&T filed a complaint against 11 Water and its members in Minnesota state court for breach of contract. (*Id.* ¶¶ 10, 35.) MB&T obtained a judgment on November 5, 2020, holding all defendants jointly and severally liable for the principal balance of the loan plus interest and other fees. (*Id.* ¶ 11.) Despite MB&T's collection efforts, the judgment remains largely unsatisfied. (*Id.* ¶¶ 12.)

## II.    PROCEDURAL HISTORY

MB&T filed this action on April 28, 2022. In its Complaint, MB&T seeks damages under three causes of action: (1) breach of contract, (2) negligence, and (3) promissory estoppel. (*Id.* ¶¶ 39–57.)

On the breach of contract claim, MB&T alleges that the Control Agreement is a valid contract between Strommen and Principal for the benefit of MB&T as an express and intended third-party creditor beneficiary. (*Id.* ¶ 40.)  MB&T further alleges that Principal was aware of Strommen's duty and obligation to MB&T, as well as Principal's own obligation to protect MB&T's first lien position on the Account by preventing any transfer of the assets without MB&T's authorization. (*Id.* ¶¶ 41–43.)  MB&T asserts that Principal's failure to prevent the transfer constitutes a material breach of the Control Agreement, which has caused MB&T to suffer damages in excess of $75,000, including its unsatisfied judgment, continuing interest and collection costs, and its reasonable and necessary attorneys' fees. (*Id.* ¶¶ 45, 47.)

On the negligence count, MB&T alleges that Principal had a duty to act reasonably and responsibly with respect to management of the Account and to prevent such unauthorized transfer, and that Principal breached this duty by failing to ensure the assets in the Account were preserved and protected, and by permitting the unauthorized transfer without MB&T's awareness, authorization, or consent. (*Id.* ¶¶ 49, 50.)  MB&T alleges that this breach proximately caused it substantial financial damages.

Lastly, on the promissory estoppel claim, MB&T alleges that Principal made clear and definite promises to protect and preserve the Collateral in the Account, and that by its promises, Principal intended to and did induce MB&T's justifiable reliance. (*Id.* ¶¶ 54, 55.)  MB&T claims that absent such promises, MB&T would not have entered into other

agreements associated with the original 11 Water loan and thus it is entitled to enforce Principal's promises to prevent injustice. (*Id.* ¶¶ 56, 57.)

Principal then filed this Motion to Dismiss all claims against them. (Mot. Dismiss, Docket No. 11.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint

"does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.   ANALYSIS

### A. Breach of Contract

Principal's main argument is that there was no valid contract because there was no consideration by and between Principal and Strommen for the Control Agreement. Further, Principal argues that even if the existence of a contract is properly alleged, there is no breach because nothing in the Control Agreement obligated Principal to **prevent** anything. Principal notes that the Control Agreement states that Principal would not affect any transfer of Strommen's interest in any of the Collateral without MB&T's consent. However, MB&T only alleges that Principal transferred management of the Account to another firm, leaving Strommen's interest unaffected. Thus, Principal asserts, it follows that even if the Control Agreement was a contract, Principal did not breach it.

Under Minnesota law, a breach of contract claim contains four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp.2d 951, 961 (D. Minn. 2000) (citing *Briggs Trans. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1970)). The formation of a contract requires a specific and definite offer, acceptance, and consideration. *See Taxi Connection v. Dakota, Minnesota & Eastern R.R. Corp.*, 513 F.3d 823, 826 (8th Cir. 2008) (citing

*Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. App. 2006)).

"Consideration is something of value exchanged for a performance or promise of performance." *In re MJK Clearing, Inc.*, 408 F.3d 512, 515 (8th Cir. 2005) (citing *E.J. Baehr v. Penn–O–Tex Oil Corp.*, 104 N.W.2d 661, 665 (Minn. 1960)). "Consideration requires that a contractual promise be the product of a bargain" but bargain "does not mean an exchange of things of equivalent, or any, value," but rather, "a negotiation resulting in the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other." *Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 220 (Minn. 1962). Consideration thus ensures that "the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or negotiation." *Id.*

On the evidence currently before the Court, MB&T has adequately alleged that there was consideration. MB&T alleges that consideration was present because "[a]bsent Principal's agreement, the Bank would not have accepted the Account as the sole security for the Loan," and that in exchange for Principal's pledge to protect the collateral in the Account, Strommen "allowed the funds to remain on deposit with and under the management of Principal." (Compl. ¶ 23.)

MB&T further alleges that Principal was fully aware of Strommen's obligation to MB&T. "Although Plaintiffs' allegations may not be as specific as they could be, Plaintiffs

need not prove each of the elements of the claim." *Knaak v. Armour-Eckrich Meats, LLC*, 991 F. Supp. 2d 1052, 1063 (D. Minn. 2014) (internal quotation marks and citation omitted). It is enough at this stage that MB&T alleges that the consideration for the Control Agreement was Principal retaining control and management of the Account, which held in excess of $7 million at the time.

Principal also suggests that since MB&T was not a party to the Control Agreement, it cannot recover because it is not an express and intended beneficiary. To the extent Principal is making this argument, MB&T is rightly a third-party beneficiary.

It is the prevailing rule in Minnesota that a third party may sue on a contract made for his direct benefit. *Buchman Plumbing Co. v. Regents of the Univ. of Minnesota*, 215 N.W.2d 479, 483 (1974). A prerequisite to giving full force and effect to the rights of third-party beneficiaries is some expression of intent on the part of the contracting parties that the person asserting such rights is to be a beneficiary of that contract. *Id.* Such intent to benefit is found in the contract in light of all the surrounding circumstances. *Id.*

If, by the terms of the contract, performance is directly rendered to a third party, he is intended by the promisee to be benefited. *Id.* at 484. Otherwise, if the performance is directly rendered to the promisee, the third party who also may be benefited is an incidental beneficiary with no right of action. *Id.* Additionally, Minnesota law requires that the promisor's performance discharges a duty owed by the promisee to the third party. *Id.* In other words, a creditor beneficiary is defined as one to whom the promisee

owes or is believed to owe a duty which is discharged by the promisor's performance, and the contractual right the third-party beneficiary acquires is to enforce a promise made for his benefit which he otherwise would not be able to enforce.  *Id.*

Taking the allegations in the Complaint as true as required at this stage, MB&T was a third-party beneficiary because Strommen owed a duty to MB&T to safeguard the Collateral in the Account as a security interest for the 11 Water loan.  Principal is the promisor who promised to safeguard the Collateral absent written instructions from MB&T.  Principal's performance in safeguarding the collateral would have discharged the duty owed by Strommen to MB&T, "allowing MB&T to fully satisfy the indebtedness from the pledged collateral account."  (Pl. Mem. Opp. Mot. Dismiss at 5, June 27, 2022, Docket No. 16.)  This, in turn, gives MB&T the contractual right to enforce Principal's promise to safeguard the Collateral, which was made for MB&T's benefit.

Additionally, MB&T has sufficiently alleged that Principal made a promise.  By signing the Control Agreement, Principal agreed to the provision that "the Collateral . . . are not to be paid to anyone other than to the Lender until and unless you receive further written notice from Lender."  (Decl. M. Eslick Supp. Mot. Dismiss, at 2, June 6, 2022, Docket No. 13.)  The Lender was clearly identified as MB&T on the Control Agreement and Principal agreed that it would not pay the assets in the Account to anyone other than MB&T until and unless Principal received further written notice from MB&T.  Moreover, Principal seems to concede that the Control Agreement provided that Principal "would

not affect any transfer of Strommen's interest in the collateral without [MB&T]'s consent." (Def. Mem. at 7.) Thus, it does appear that Principal made a promise to not pay out the assets or effect a transfer of such assets out of the Account without MB&T's consent.

MB&T has further sufficiently alleged that such promise was breached when Principal transferred the assets to a different brokerage firm without MB&T's knowledge or consent. Whether or not Strommen's **interest** was unaffected by transfer is not dispositive; the assets were moved without MB&T's authorization, in opposition to the direction in the Control Agreement to which Principal agreed.

In sum, taking the Complaint's allegations as true and drawing all reasonable inferences in MB&T's favor, enough has been alleged to state a claim for relief. Accordingly, the Court will deny Principal's Motion to Dismiss as to the breach of contract claim.

### B. Negligence

Principal argues that MB&T has failed to properly plead a negligence claim because Principal's alleged conduct is too far removed from the conduct that may have damaged MB&T, therefore there is no proximate causation. To state a valid cause of action for negligence, a plaintiff must demonstrate "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011) (citing

*Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001)); *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn. 1995).

MB&T has alleged enough to state a negligence claim at this juncture. In Minnesota, "a party's negligence is the proximate cause of an injury, if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others and the defendant's conduct was a substantial factor in bringing about the injury." *McDougall v. CRC Indus., Inc.*, 523 F. Supp. 3d 1061, 1072 (D. Minn. 2021) (quoting *Lubbers*, 539 N.W.2d at 401) (internal quotations omitted). Here, MB&T has sufficiently alleged that Principal's conduct was a substantial factor in bringing about its injury because Principal ought to have anticipated that effecting a transfer of the assets out of the Account to another brokerage firm would likely result in MB&T's losing its first lien status and security interest in the Collateral in the Account. The unauthorized transfer was a substantial factor in causing MB&T to lose its security interest. As MB&T notes, Principal's conduct need not be the **sole** cause of injury in order to be a proximate cause. *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 374–75 (Minn. 2008). Although the other conduct that Principal lists in its briefing likely contributed to MB&T's harm, that does not negate MB&T's allegation that Principal's conduct was a proximate cause.

Because MB&T has adequately alleged negligence, the Court will deny Principal's motion as to this claim.

    **C. Promissory Estoppel**

Promissory estoppel is an equitable remedy that implies "a contract in law where none exists in fact." *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981). The elements of promissory estoppel are: (1) a clear and definite promise; (2) the promisor intended to induce reliance and the promisee so relied; and (3) the promise must be enforced to prevent injustice. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). The promisee's reliance must be reasonable such that the promisee was not aware of the possibility that the promise would not occur and relied only to a reasonable degree. *Meriweather Minn. Land & Timber, LLC v. State*, 818 N.W.2d 557, 567 (Minn. App. 2012).

Principal challenges MB&T's claim of reliance. Reliance requires that "the promisor intended to induce reliance and the promisee in fact relied to his or her detriment." *Martens,* 616 N.W.2d at 746. The promise must be such that it "might reasonably induce the promisee's action or inaction." *Faimon v. Winona State Univ.,* 540 N.W.2d 879, 882 (Minn. App. 1995), *review denied* (Minn. Feb. 9, 1996). Where a party is aware that there is a possibility that the promised result may not occur, reliance may not be reasonable. *See Javinsky v. Commissioner of Admin,* 725 N.W.2d 393, 399 (Minn. App. 2007). Moreover, the degree of the promisee's reliance on the promise must be reasonable. *Christensen v. Mpls Mun. Employees Retirement Bd,* 331 N.W.2d 740, 749 (Minn. 1983). A court must address "to what degree and to what aspects of the promise has there been reasonable reliance." *Id.*

-13-

Principal argues that MB&T does not plausibly plead that Principal **intended** to induce reliance because nothing in the Control Agreement says anything about Principal's execution being a prerequisite to the loan, or that anyone would rely on such execution for any reason. Instead, it is merely a notice that Strommen granted a security interest in the Account and Principal's acknowledgment of that security interest; it does not mention the monetary loan at all.

MB&T has alleged enough at this stage for its promissory estoppel claim. It is reasonable to infer that Principal's promise to not effect a transfer of the Collateral without MB&T's consent would induce MB&T to rely on that promise in its decision to extend the loan. As MB&T alleges, Principal was well aware of Strommen's obligation to MB&T and thus it is also reasonable that Principal would intend to induce reliance by signing the Control Agreement and agreeing to not effect a transfer absent MB&T's written authorization.

Even if Principal did not know that but for Principal's promise, MB&T would not have extended the loan, it still is plausible that Principal intended to induce some reliance on its promise not to affect a transfer without authorization. It is also plausible that such reliance was reasonable, whether or not Principal knew the extent of that reliance. MB&T sufficiently alleges that it relied on the promise to its detriment because it extended the loan with the Account as sole Collateral and lost that first lien position and security interest when the Account was transferred without its authorization, thus preventing

-15-

MB&T from satisfying Strommen's indebtedness when his company defaulted on the loan. These allegations are sufficient. The Court will deny Principal's motion as to the promissory estoppel claim.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 11] is **DENIED**.

DATED: January 18, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge