**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MINNESOTA BANK & TRUST,

                                                   Civil No. 22-1104 (JRT/ECW)

                Plaintiff,

v.

                                    **MEMORANDUM OPINION AND ORDER**

PRINCIPAL SECURITIES, INC.,            **GRANTING DEFENDANT'S 12(B)(1)**
                                                   **MOTION TO DISMISS**

                Defendant.

---

John Rock and Kathryn A. Stephens, **ROCK HUTCHINSON, PLLP**, 120 South Sixth Street, Suite 2480, Minneapolis, MN 55402, for Plaintiff.

Angel West, **MAYNARD NEXSEN PC**, 9313 Huntington Circle, Johnston, IA 50131; Christopher M. Daniels and Gregory Arenson, **PARKER DANIELS KIBORT LLC**, 123 North Third Street, Suite 888, Minneapolis, MN 55401; and Thomas Clinton Goodhue, **MAYNARD COOPER & GALE, P.C.**, 801 Grand Avenue, Suite 100, Des Moines, IA 50309, for Defendant.

Plaintiff Minnesota Bank and Trust ("MBT")[1] issued a $5 million commercial loan to 11 Water, LLC, which was owned by Jack Strommen. Defendant Principal Securities ("Principal"), Strommen's brokerage account servicer, executed a control agreement forbidding transfer of Strommen's assets that had been pledged as security for the commercial loan without MBT's consent. But Principal did just that, allowing Strommen

---

[1] The Court's references to MBT and Principal throughout this order include their predecessors in interest operating under different names, including Signature Bank and Princor Financial Services.

to move assets to First Republic without consulting MBT. MBT claims that it lost lien priority as a result and was unable to collect on the previously secured collateral when 11 Water later defaulted.

Critically for this motion, though, MBT voluntarily released its claim to Strommen's brokerage account between the time when Principal authorized the fund transfer and when 11 Water defaulted. When MBT voluntarily released its claim to Strommen's assets, it disrupted the causal chain between the wrongful conduct—the asset transfer—and MBT's injury—its inability to collect. Accordingly, MBT does not have standing and the Court will grant Principal's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

### I. FACTS

MBT issued a $5 million commercial loan to 11 Water in 2015. (Mem. Op. & Order Den. Def.'s Mot. Dismiss ("MTD Order") at 2, Jan. 18, 2023, Docket No. 31.) As collateral, it took a security interest in Strommen's Principal brokerage account, which contained over $7 million in assets. (*Id.*) Principal executed a Control Agreement which acknowledged MBT's first lien position and security interest in Strommen's brokerage account and promised not to transfer any assets absent MBT's prior written consent. (*Id.*) About one year later, though, Principal allowed Strommen to transfer all assets to another brokerage firm, First Republic, without notifying MBT or receiving MBT's consent. (*Id.* at

3; Compl. ¶ 28, Apr. 28, 2022, Docket No. 1.) Strommen's account was still worth over $7 million at that time. (MTD Order at 4.)

Once in possession of Strommen's assets, First Republic refused to acknowledge MBT's first lien position. (Compl. ¶ 31.) In fact, First Republic quickly issued an additional loan to Strommen and titled the brokerage account "Jack B. Strommen, Pledged Collateral Account F[or] B[enefit] O[f] First Republic Bank." (*See* Decl. Kathryn A. Stephens Supp. Pl.'s Opp. Def.'s 2nd Mot. Dismiss ¶ 5, Ex. D at 2, July 5, 2023, Docket No. 70.) MBT alleges that, under this arrangement, First Republic jumped into first lien position and MBT was unable to regain top priority.[2] (*See* Decl. Matthew R. Eslick ("Eslick Decl.") ¶ 5, Ex. 4 at 2, June 14, 2023, Docket No. 48-2; Mem. Opp. Def.'s 2nd Mot. Dismiss ("Opp. Br.") at 11, July 5, 2023, Docket No. 65.) Shortly thereafter, Strommen executed a security agreement acknowledging MBT's claim to his First Republic brokerage account. (*See* Eslick Decl. ¶ 6, Ex. 5, June 14, 2023, Docket No. 51.)

About six months after Strommen transferred his brokerage account to First Republic, 11 Water and MBT renegotiated loan terms. (*See* Eslick Decl. ¶ 10, Ex. 9, June 14, 2023, Docket No. 55.) The parties extended the maturity date and released Strommen's First Republic brokerage accounts as collateral. (*Id.* at 2.) Accordingly, the June 2017 renegotiated agreement described the loan as "[u]nsecured." (*Id.*) Another

---

[2] Principal now claims that, under Minnesota law, MBT maintained first lien position throughout. Because Principal raised that argument for the first time at the hearing and MBT did not have a fair chance to respond, the Court will not accept that claim for purposes of this order.

-3-

renegotiated agreement four months later again marked the loan as unsecured. (Eslick Decl. ¶ 11, Ex. 11 at 2, June 14, 2023, Docket No. 57.)

One year later, in September 2018, Strommen transferred most of his assets out of his First Republic brokerage account. (Eslick Decl. ¶ 13, Ex. 12 at 5, June 14, 2023, Docket No. 58.) His balance dropped from over $10.5 million to under $1 million. (*See id.*) Around that same time, First Republic noted satisfaction of Strommen's obligations to First Republic and authorized removal of First Republic's name from Strommen's brokerage account. (*See* Eslick Decl. ¶ 14, Ex. 13 at 3, June 14, 2023, Docket No. 59.)

Finally, about one year later, 11 Water defaulted on MBT's loan with approximately $3 million outstanding. (MTD Order at 4.) MBT obtained a judgment in state court holding 11 Water, Strommen, and others jointly and severally liable. (*Id.*) MBT entered a notice of partial satisfaction of judgment with the state court, indicating Strommen's liability was fully satisfied by a negotiated settlement of $1.25 million. (Eslick Decl. ¶ 9, Ex. 8 at 3, June 14, 2023, Docket No. 54.) The judgment otherwise remains unpaid. (MTD Order at 4.)

## II. PROCEDURAL HISTORY

MBT filed this action against Principal alleging damages—namely, its inability to fully collect on the state court judgment—attributable to Principal's improper transfer of Strommen's collateralized brokerage account. (*See, e.g.*, Compl. ¶¶ 45, 47.) MBT sought recovery for breach of contract, negligence, and promissory estoppel. (*Id.* ¶¶ 39–57.)

The Court denied Principal's first motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* MTD Order.) But while discovery was ongoing, Principal filed a second motion to dismiss pursuant to Rule 12(b)(1). (*See* Mem. Supp. Rule 12(b)(1) Mot. at 1, June 14, 2023, Docket No. 45.) Principal alleges that discovery clarified that MBT does not have standing to pursue this action, primarily because MBT's injury is not traceable to Principal's actions. (*See id.* at 1–2.) Before the hearing on this motion, fact discovery concluded. (*See* Pretrial Scheduling Order at 2, Mar. 22, 2023, Docket No. 36.) MBT thus had an opportunity to bring relevant facts from discovery to the Court's attention. (*See* Tr. Mot. Hearing at 16:14–15, Jan. 23, 2024, Docket No. 118.)

## DISCUSSION

### I.   STANDARD OF REVIEW

The Constitution limits federal-court jurisdiction to cases or controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citing U.S. Const. art. III, § 2). Accordingly, MBT must demonstrate standing by showing that it suffered an injury in fact that is fairly traceable to Principal's conduct and likely to be redressed by the relief sought. *Id.* at 338.

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction, including for lack of standing, and "requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). The party seeking to invoke a federal court's subject matter jurisdiction bears the burden of showing that the court has jurisdiction. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817,

822 (8th Cir. 2011). A court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal citations omitted). The Court also accepts as true all facts alleged in the complaint, construing all reasonable inferences in the plaintiff's favor. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In contrast, "[i]n a factual attack, the court considers matters outside the pleadings" and the non-moving party does not "enjoy the benefit of the allegations in its pleadings being accepted as true." *Osborn*, 918 F.2d at 729 n.6 (citations omitted). "The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations and internal quotation marks omitted).

MBT contends a factual challenge is premature, and the Court must constrain itself to the pleadings and a Rule 12(b)(6) standard of review. But pre-discovery factual challenges are proper as a general matter and are proper here. *See Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008); *Carlsen*, 833 F.3d at 908.

The only facts that present jurisdictional problems for MBT were within MBT's control—the circumstances behind the voluntary release of its own security interest. Even if there were facts for which jurisdictional discovery would be appropriate, MBT should have submitted an affidavit requesting such discovery rather than attempting to constrain the Court to a facial evaluation. *See Johnson*, 534 F.3d at 965 ("Courts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts."); Fed. R. Civ. Pro. 56(d) (identifying affidavit or declaration as the appropriate means for a nonmovant to gain responsive discovery). And fact discovery proceeded for four months after Principal filed this motion, the salient results of which MBT was given an opportunity to raise to the Court at the hearing on this motion. Accordingly, the Court will proceed with Principal's factual challenge to its jurisdiction.

## II.     ANALYSIS

For MBT to have standing, it must show that its inability to recover the collateralized loan is "fairly traceable" to Principal's unnoticed transfer of Strommen's brokerage account. *See Spokeo*, 578 U.S. at 338. MBT claims it does not need to satisfy the usual standing requirements, including traceability, because this is a contract dispute. Not so. *See In re Bioserv Corp.*, No. 22-1213, 2023 WL 4084824, at *5 (B.A.P. 9th Cir. June 20, 2023); *cf. Carlsen* 833 F.3d at 909–10 (analyzing the typical three standing factors in a breach of contract action). Rather, it is the "irreducible constitutional minimum" that injury, causation, and redressability be established for Article III jurisdiction to be proper in any case. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Principal argues four intervening events disrupt the causal chain required for standing: (1) MBT's failure to demand Strommen obtain a letter of credit from First Republic when the funds were first transferred, (2) MBT's voluntary release of its security interest in 2017, (3) MBT's settlement with Strommen in state court, and (4) various acts of third parties.  Because the second event is sufficient to deprive the Court of standing, the Court will constrain its analysis to the voluntary releases.

Because MBT released its security interest in Strommen's brokerage account in June 2017 when it extended the loan maturity date, MBT's later inability to collect the collateral is not fairly traceable to Principal's earlier improper transfer.[3]  After all, whether the interest was released from a Principal or First Republic account, the end result would be the same.  By the time MBT tried to collect, a waived security interest would do it no favors.  And although MBT theorizes that it may not have executed the release absent Principal's transfer, causation must be more than speculative for a litigant to have standing.  *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 758–59 (1984).  The Court sees no concrete factual basis to presume that MBT would not have released its security interest had the funds remained with Principal, nor why the release was a necessary response to the asset transfer.  Accordingly, the Eighth Circuit's teaching that subsequent conduct

---

[3] The Court notes that Principal only learned about the releases through discovery.  Thus, though Principal tries to repackage some of its 12(b)(6) proximate cause arguments as 12(b)(1) traceability issues, this issue is genuinely new since the Court denied Principal's first motion to dismiss.

"forced" by a breach is caused by the defendant is inapposite. *See ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 961 (8th Cir. 2011).

What is more, MBT's interest in the First Republic brokerage account remained valuable when it executed the voluntary release in 2017. As of September 2018, the account had nearly $11 million dollars in assets. That would have been more than enough to satisfy the outstanding loan amount. Thus, MBT's inability to collect is attributable to its release of an interest in those funds, not the details of where those funds were kept.

MBT protests that it had already been injured by the time it executed the voluntary release because, as part of the account transfer, First Republic supplanted MBT's first lien priority. But lien priority is not inherently meaningful. First Republic's leapfrogging would only have been injurious if MBT was unable to collect as a result. MBT did not even attempt to do so before releasing its interest. MBT had suffered no concrete injury from loss of first lien status at the time it released the funds in 2017.

Ultimately, MBT's injury is attributable to its own conduct. By executing the voluntary release, MBT laid down its best weapon to safeguard its interests and now asks for the Court's protection because it is unarmed. That is not the role of an Article III tribunal, though. *See ABF Freight*, 645 F.3d at 961 ("A plaintiff who causes its own injury does not satisfy the traceability prong.").

## CONCLUSION

When MBT released Strommen's brokerage accounts as collateral in 2017, it broke the causal chain between Principal's wrongdoing and MBT's harm. Accordingly, MBT's

injury is not traceable to Principal's conduct, the Court lacks standing, and the Court will grant Principal's Motion to Dismiss pursuant to Rule 12(b)(1).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Docket No. 44] is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment [Docket No. 107] is **DENIED as moot**, and;

3. Plaintiff's action is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 21, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge